**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. [SBN: 249203]
ak@kazlg.com
Jason A. Ibey, Esq. [SBN: 284607]
jason@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**BANKRUPTCY LAW CENTER, APC**
Ahren A. Tiller, Esq. [SBN: 250608]
ahren.tiller@blc-sd.com
1230 Columbia Street, Suite 1100
San Diego, CA 92101
Telephone: (619) 894-8831
Facsimile: (866) 444-7026

[Additional Counsel On Signature Page]

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL RIVERA; LAUREANO AVALOS; ARACELI GONZALEZ; and GIANA MATANANE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ENCORE CAPITAL GROUP, INC.; MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT  INC.; and ASSET ACCEPTANCE, LLC<br><br>Defendants. | Case No.: 3:15-cv-02112-L-JLB<br><br>FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF FOR:<br><br>1.) VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT [18 U.S.C. § 1962(c)]<br><br>2.) CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT [18 U.S.C. § 1962(d)]<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1.      Plaintiffs SAMUEL RIVERA; LAUREANO AVALOS; ARACELI GONZALEZ; and GIANA MATANANE (hereinafter referred to collectively

as "Plaintiffs") bring this class action against ENCORE CAPITAL GROUP, INC.; MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT, INC.; and ASSET ACCEPTANCE, LLC ("Defendants"), with respect to the unlawful business practice of filing fraudulent proofs of claim and invalid proofs of claim for time-barred debts en masse in Chapter 13 bankruptcy cases throughout the United States, thereby unjustly receiving millions of dollars in payments on said invalid proofs of claim.

2.     A Chapter 13 Bankruptcy case is in essence a repayment plan, whereby an individual who files for bankruptcy (hereinafter referred to as a "debtor") pays back their creditors according to a court confirmed plan. The debtor pays a monthly payment amount to the chapter 13 bankruptcy trustee, who then in turn takes said money and disburses it to pay allowed creditors' claims. In a chapter 13 bankruptcy case, listed creditors are noticed by the Bankruptcy Noticing Center (BNC) upon filing. Creditors then have until the claims bar date to file proofs of claim that serve as the basis for the amounts owed to each creditor. The Chapter 13 Trustee will only pay creditors who file proofs of claim. In the bankruptcy context, state law controls whether a particular claim is enforceable. If a particular claim is unenforceable pursuant to the applicable statute of limitations or the creditor has no valid right to collect upon the debt that is the basis of the proof of claim, said proof of claim will be disallowed in bankruptcy court if an objection is filed. A time-barred debt is not a valid claim under the bankruptcy code.

3.     The Defendants have participated in a widespread criminal conspiracy wherein they have acted in concert with one another to file en masse hundreds of thousands of proofs of claim in chapter 13 bankruptcy cases where they are not the owners of the alleged debts used as the basis for the underlying proofs of claim and/or Defendants know the underlying claims are time-barred by the applicable statute of limitations. In doing so,

Defendants knowingly and fraudulently filed false proofs of claim and/or receive material amounts of property from a debtor after the filing of a bankruptcy case, with the intent to defeat the provisions of Title 11, which constitute violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962 et seq.)

4.     As Judge Schmetterer of the Northern District of Illinois bankruptcy court wrote regarding this practice:

> There is likely a tendency to deceive or mislead some debtors by filing proofs of claim for stale debt.  Otherwise, there would be no point in filing them.  By definition, stale debt is debt that is no longer owed.  Debt collectors may get paid by a Chapter 13 debtor despite having no right to payment.  Claimants' own argument that creditors are "invited" to file proofs of claim shows how deception would take place.  Section 502(a) provides that a proof of claim is 'deemed allowed unless a party in interest … objects."  This "clock work-mechanism" (Claimants' term) puts the burden on the debtor, the trustee, or another creditor to object.  Otherwise the trustee must pay pro rata on the claim out of debtors' plan payments according to the Chapter 13 plan.  11 U.S.C. §§ 1322(a)(3), 1326(c).  The very fact that debt collectors are systematically engaged in this practice suggest that the practice succeeds in deceiving some part of the debtor population.
>
> Debt buyers probably file proofs of claim in Chapter 13 cases because the usual allowance of many proofs of claim may result in debtors in Chapter 13 bankruptcies paying them out of future income…
>
> Because there is no good reason to allow proofs of claim for stale debt, the frequent allowance of and payment on such claims would be enough to show deception.  It would be sufficient proof to assemble a large enough representative sample of proofs of claim filed by debt collectors, isolate the proofs of claim for stale debt, and analyze that set to determine how often those proofs of claim are allowed.  That would show the rate at which courts, trustees, and debtors are deceived into paying those claims.
>
> Perhaps ...(the Claimants)… have discoverable records analyzing their success from filing proof of claims for stale debt.  It is likely that they keep a record of the proofs of stale claims they file and the success rate of those proofs of claim.

*Avalos v. LVNV Funding, LLC (In re Avalos)*, 531 B.R. 748 (Bankr. N.D. Ill. 2015).

5.     Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to Plaintiffs, or to Plaintiffs' attorneys, which Plaintiffs allege on personal knowledge.

6.      Unless otherwise indicated, the use of any of Defendants' names in this First Amended Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogates, representatives and insurers of the named Defendants.

## JURISDICTION AND VENUE

7.      Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 6, inclusive, as though fully set forth.

8.      This Court has jurisdiction over this matter pursuant to 18 U.S.C. § 1962 et seq.

9.      Defendant, ENCORE CAPITAL GROUP, INC. (hereinafter "Encore") is a foreign corporation organized and existing under the laws of the State of Delaware.  Encore's principle office is located at 8875 Aero Drive, Suite 200, San Diego, California 92123.

10.     Defendant, MIDLAND FUNDING, LLC (hereinafter "Midland Funding") is a foreign limited liability company organized and existing under the laws of the State of Delaware.  Midland Funding's principle office is also located at 8875 Aero Drive, Suite 200, San Diego, California 92123.  Midland Funding is a wholly owned subsidiary of Encore.

11.     Defendant, MIDLAND CREDIT MANAGEMENT, INC. (hereinafter "Midland Credit") is a foreign corporation organized and existing under the laws of the State of Kansas.  Midland Funding's principle office is also located at 8875 Aero Drive, Suite 200, San Diego, California 92123 as well.  Midland Funding is also a wholly owned subsidiary of Encore.

12.     Defendant, ASSET ACCEPTANCE, LLC (hereinafter "Asset Acceptance") is a foreign limited liability company organized and existing under the laws of the State of Delaware.  Asset Acceptance's principle office

is located at 28405 Van Dyke, Warren, MI 48093. Asset is also a wholly owned subsidiary of Encore.

13.     This Court has personal jurisdiction over Defendants, because Defendants conduct business in the County of San Diego, State of California. Therefore, Defendants have sufficient minimum contacts with this state, and otherwise purposely avail themselves of the markets in this state through the filing of proofs of claim in bankruptcy cases in every district in California, including the Southern District of California. Furthermore, the conduct alleged herein in the bankruptcy cases of the named Plaintiffs occurred in the Southern District of California Bankruptcy Court. Jurisdiction by this Court is permissible under traditional notions of fair play and substantial justice.

14.     Venue is proper in the United States District Court, Southern District of California pursuant to 28 U.S.C. §1391 and 18 U.S.C. § 1965(a) for the following reasons:

(i)     Named Plaintiffs all reside in the County of San Diego, State of California which is within this judicial district.

(ii)    The conduct complained of herein occurred within this judicial district as all named Plaintiffs' bankruptcy cases were filed in the County of San Diego, State of California; and

(iii)   Defendants are subject to personal jurisdiction in this district, as they conduct business within this judicial district.

## PARTIES

15.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 14, inclusive, as though fully set forth.

16.     Plaintiffs are all, and at all times mentioned herein were, individual citizens and residents of the United States of America, State of California,

County of San Diego.

17.     Defendants are a group of entities associated together for a common purpose of engaging in the filing of fraudulent time-barred proofs of claim, an act affecting interstate commerce, with the intent to knowingly and intentionally file false proofs of claim and/or misrepresent the validity of said claims and receive material amounts of property from a debtor after the filing of a bankruptcy case by the debtor, with the intent to defeat the provisions of title 11, and therefore are an "Enterprise" as the term is defined by 18 U.S.C. § 1961(4).

18.     Defendants are all persons who use an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, or who regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

19.     Defendants all in the ordinary course of business, regularly, on behalf of themselves, or others, engage in interstate debt collection.

20.     Whenever this First Amended Complaint refers to any act or acts of Defendants, the reference shall also be deemed to mean that the directors, officers, employees, affiliates, controlling companies, or agents of the responsible Defendant who authorized such acts while actively engaged in the management, direction or control of the affairs of Defendant, and each of them, and/or by persons who are the alter ego of Defendants, or while acting within the scope of their agency, affiliation, control or employment. Whenever this First Amended Complaint refers to any act of Defendants, the reference shall be deemed to be the act of each Defendant, jointly and severally.

## STANDING FOR PLAINTIFFS TO BRING THIS ACTION

21.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 20, inclusive, as though fully set forth.

22.     The Plaintiffs have suffered an injury in fact as a result of Defendants' conduct.

23.     11 U.S.C. §1303 states,  "[S]ubject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(i), of this title."  11 U.S.C. §363 confers on the trustee the right to exercise control over estate property.

24.     Pursuant to 11 U.S.C. §1306, Plaintiffs shall remain in possession of all estate property.  In the Chapter 13 context, the Debtor has exclusive rights to control estate property, and therefore the Plaintiffs have the right to prosecute these claims against Defendants on behalf of themselves and other similarly situated individual members of the Class even if they were to be deemed "estate property."

25.     Furthermore, all of the Plaintiffs' chapter 13 plans have been confirmed.  Pursuant to 11 U.S.C. § 1327, confirmation of the plan vests all of the property of the estate in the debtor.  Therefore, the Plaintiffs' claims against the Defendants are theirs to prosecute free and clear of the chapter 13 trustee and/or creditors.

## GENERAL ALLEGATIONS

### *Relationships between Defendants*

26.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 25, inclusive, as though fully set forth.

27.     Encore is a publicly traded company that owns 30+ subsidiary entities. Midland Funding, Asset and Midland Credit are all wholly-owned subsidiaries of Encore.

28.     Midland Funding purchases and owns delinquent debts (they are the largest purchaser in the United States), and Midland Funding reports the debt to credit reporting agencies.  Asset purchases and owns delinquent debts as well.  Midland Credit is the debt collector that Midland Funding and Asset Acceptance use to service and collect on its portfolio.  On Midland Funding's proofs of claim, the creditor is Midland Funding and the filer, agent, and servicer is Midland Credit, however all payments on said claims are directed to be sent to Midland Credit at Asset Acceptance's office in Warren, Michigan.  On many of Asset's proofs of claim, Asset Acceptance is listed as the creditor/owner and Midland Credit is listed as the filer, agent, and servicer.  Encore Capital Group, Inc. is the parent company overseeing this "Enterprise."  Encore uses its subsidiaries to perpetuate their massive scheme to defraud hundreds of thousands of bankruptcy debtors into paying on fraudulent and/or time-barred invalid proofs of claims in bankruptcy cases throughout the United States.

29.     Midland Funding and Asset use Midland Credit to service and collect on delinquent debts purchased by Midland Funding and Asset.  Asset will occasionally be assigned debts from Midland Funding and merely file the invalid proofs of claim on their own behalf, however all payments owed to Midland Funding or Asset are sent via mail by the Chapter 13 Trustees to Asset in Warren, Michigan, to collect upon on behalf of the Enterprise.

30.     Defendants all are engaged in the collection of delinquent debts.  Their business practices exposes them to risks of liability for failing to comply with applicable debt collection, consumer protection, and credit reporting statutory requirements.  To insulate their risk, the Defendants have colluded

together to segregate operations among multiple entities that work in conjunction with one another all being directed by the parent company Encore.  For example, Midland Funding and Asset Acceptance allegedly acquires "bad debts" which have been charged off by the original creditors and reports the information to Credit Reporting Agencies, while Midland Credit handles collection activities on those debts, and Asset Acceptance collects all of the payments at their office in Warren, Michigan.  The compartmentalization of these different entities was set up to shield the Defendants from liability, confuse investigative agencies, and further perpetuate their criminal enterprise.

### Predicate Acts Involving Plaintiff Samuel Rivera

Violations of 18 U.S.C. §152(4)&(5)
[Fraud Connected to Bankruptcy - 18 U.S.C. 1961(1)(D)]

31.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 30, inclusive, as though fully set forth.

32.     On April 30, 2014, Plaintiff, Samuel Rivera filed an Individual Chapter 13 bankruptcy case in the United States Bankruptcy Court for the Southern District of California, with case number 14-03486-LA13.

33.     Plaintiff, Samuel Rivera's Chapter 13 plan was confirmed on June 14, 2014, with a provision providing for a distribution paying 100% of all allowed unsecured creditor claims, plus 3% annual interest.

34.     On May 27, 2014, Defendant, Midland Credit filed a proof of claim, marked as Proof of Claim # 2-1 on behalf of Defendant, Midland Funding, in Samuel Rivera's Chapter 13 bankruptcy case (Case No. 14-03486-LA13).

35.     Proof of claim # 2-1 provided for a claim in the amount of $656.08,

and listed the current creditor as Defendant, Midland Funding, the original creditor as Bank of Marin, the assignor as Atlantic Credit and Finance, provided that Defendant, Midland Credit was the agent where notices and payments should be sent, and provided Defendant, Asset Acceptance's address in Warren, Michigan.

36.     The last payment made on the original debt used as the basis for proof of claim # 2-1 was December 26, 2003.

37.     On May 27, 2014, Defendant, Midland Credit filed another proof of claim, marked as Proof of Claim # 3-1 on behalf of Defendant, Midland Funding, in Plaintiff, Samuel Rivera's Chapter 13 bankruptcy case (Case No. 14-03486-LA13).

38.      Proof of claim # 3-1 provided for a claim in the amount of $191.82, and listed the current owner and creditor as Defendant, Midland Funding, the original creditor as Verizon Wireless, provided that Defendant, Midland Credit was the agent where notices and payments should be sent, and provided Defendant, Asset Acceptance's address in Warren, Michigan.

39.     The last payment made on the original debt used as the basis for proof of claim # 3-1 was June 20, 2006.

40.     On June 16, 2014, Defendant, Midland Credit filed another proof of claim, marked as Proof of Claim # 4-1 on behalf of Defendant, Asset in Plaintiff, Samuel Rivera's Chapter 13 bankruptcy case (Case No. 14-03486-LA13).

41.     Proof of claim # 4-1 provided for a claim in the amount of $1,489.74, and listed the current owner and creditor as Defendant, Asset Acceptance, the original creditor as Bank of America, the assignor as Fia Card Services, N.A., provided that Defendant, Midland Credit was the agent where notices and payments should be sent, and provided the same address as proofs of claim 2-1 and 3-1 in Warren, Michigan.

42.     The last payment made on the original debt used as the basis for proof of claim # 4-1 was January 4, 2006.

43.     The last payments received on the alleged debts used as the basis for proofs of claim # 2-1, # 3-1, and # 4-1 were all over 8 years prior to Samuel Rivera's bankruptcy case filing.

44.     On May 12, 2015, the Chapter 13 Trustee, David L. Skelton took the Debtor's funds on hand with the Chapter 13 Trustee and distributed $52.90 to Midland Credit on behalf Midland Funding to pay Proof of Claim # 2-1, another $15.55 to Midland Credit on behalf of Midland Funding to pay Proof of Claim # 3-1, and another $120.10 to Midland Credit on behalf Asset to pay Proof of Claim # 4-1.

45.     On August 11, 2015, the Chapter 13 Trustee, David L. Skelton again took Samuel Rivera's funds on hand with the Chapter 13 Trustee and distributed another $483.84 to Midland Credit on behalf of Midland Funding to pay Proof of Claim # 2-1, another $133.28 to Midland Credit on behalf of Midland Funding to pay Proof of Claim # 3-1, and another $1,030.05 to Midland Credit on behalf Asset to pay Proof of Claim # 4-1 filed in Samuel Rivera's Chapter 13 bankruptcy case (Case No. 14-03486-LA13).

46.     To date, the Defendants have unjustly received $483.84 in payments on Proof of Claim # 2-1, $148.83 in payments on Proof of Claim # 3-1, and $1,150.15 in payments on Proof of Claim # 4-1 filed in Plaintiff Samuel Rivera's Bankruptcy Case (See ¶ 37-48).

47.     The underlying debts supporting proof of claims # 2-1, # 3-1, and # 4-1 were never reduced to judgment prior to Samuel Rivera filing his bankruptcy case, and Plaintiff, Samuel Rivera never made a payment on these alleged debts after 2006.

48.     The Defendants knew they were not the valid owners of the underlying debts, therefore Defendants knowingly and intentionally presented false

1   claims for proof (Proofs of Claim # 2-1, 3-1, 4-1) against the estate of

2   Plaintiff, Samuel Rivera in Chapter 13 Bankruptcy case number 14-03486-

3   LA13.

4   49.   Furthermore, Defendants knew they were not entitled to payment on

5   these time-barred debts, therefore Defendants knowingly and intentionally

6   received material amounts of property from Plaintiff, Samuel Rivera after

7   the filing of his bankruptcy case, with the intent to defeat the provisions of

8   the bankruptcy code by filing and receiving payment on the time-barred

9   proofs of claim marked as # 2-1, # 3-1, and # 4-1.

10

11
*Predicate Acts Involving Plaintiff Laureano Avalos*

12
Violations of 18 U.S.C. §152(4)&(5)

13
[Fraud Connected to Bankruptcy - 18 U.S.C. 1961(1)(D)]

14

15   50.   Plaintiffs reallege and incorporate by reference each and every

16   allegation contained in Paragraphs 1 through 49, inclusive, as though fully

17   set forth.

18   51.   On February 28, 2014, Plaintiff, Laureano Avalos filed a Chapter 13

19   bankruptcy case in the United States Bankruptcy Court for the Southern

20   District of California with case number 14-01580-MM13.

21   52.   Plaintiff, Laureno Avalos' Chapter 13 plan was confirmed on August

22   27, 2014.

23   53.   On May 27, 2014, Defendant, Midland Credit filed a proof of claim,

24   marked as Proof of Claim # 8-1 on behalf of Defendant, Midland Funding,

25   in Plaintiff, Laureno Avalos' Chapter 13 bankruptcy case (Case No. 14-

26   01580-MM13).

27   54.   Proof of claim # 8-1 provided for a claim in the amount of $1,384.39,

28   and listed the current owner and creditor as Plaintiff, Midland Funding , the

original creditor as Verizon Wireless, provided that Defendant, Midland Credit was the agent where notices and payments should be sent, and provided Defendant, Asset Acceptance's address in Warren, Michigan.

55.     The last payment on the debt used as the basis for proof of claim # 8-1 was April 5, 2006.  Therefore, the last payment received on the debt used as the basis for proof of claim # 8-1 in Laureano Avalos' bankruptcy case was over 8 years prior to the filing of her bankruptcy case.

56.     On February 10, 2015, the Chapter 13 Trustee, David L. Skelton took the Debtor's funds on hand with the Chapter 13 Trustee and distributed $18.76 to Midland Credit on behalf Midland Funding to pay Proof of Claim # 8-1 filed in Plaintiff Laureno Avalos' Bankruptcy case (Case No. 14-01580-MM13).

57.     To date, the Defendants have unjustly received $18.76 in payments on Proof of Claim # 8-1 filed in Laureano Avalos' Bankruptcy case (Case No. 14-01580-MM13). (See ¶ 59).

58.     The underlying debt supporting proof of claim # 8-1 was never reduced to judgment prior to Ms. Avalos filing her bankruptcy case, and Plaintiff never made a payment on this alleged claim after 2006.

59.     The Defendants knew they were not valid owners of the underlying debts, therefore Defendants knowingly and intentionally presented a false claim for proof (Proof of Claim # 8-1) against the estate of Plaintiff, Laureano Avalos in her Chapter 13 Bankruptcy case (Case No. 14-01580-MM13).

60.     Furthermore, Defendants knew they were not entitled to payment on the underlying time-barred debt, therefore Defendants knowingly and intentionally received material amounts of property from Plaintiff, Laureano Avalos after the filing of her bankruptcy case, with the intent to defeat the provisions of the bankruptcy code by filing and receiving payment on a

time-barred claim (Proof of Claim # 8-1).

### Predicate Acts Involving Plaintiff Araceli Gonzalez

Violations of 18 U.S.C. §152(4)&(5)
[Fraud Connected to Bankruptcy - 18 U.S.C. 1961(1)(D)]

61.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 60, inclusive, as though fully set forth.

62.     On September 30, 2013, Plaintiff, Araceli Gonzalez filed a joint Chapter 13 bankruptcy case with her husband in the United States Bankruptcy Court for the Southern District of California with case number 13-09685-MM13.

63.     Plaintiff, Araceli Gonzalez's Chapter 13 plan was confirmed on August 27, 2014.

64.     On October 4, 2013, Defendant, Asset Acceptance filed a proof of claim, marked as Proof of Claim # 2-1 in Plaintiff, Araceli Gonzalez's Chapter 13 bankruptcy case (Case No. 13-09685-MM13).

65.     Proof of claim # 2-1 provided for a claim in the amount of $25,670.25, and listed the current owner and creditor as Plaintiff, Asset Acceptance, the original creditor as Citibank, the Assignor as Sherman Acquisitions LLC, provided that Defendant, Asset was the agent where notices and payments should be sent, and provided Asset Acceptance's address in Warren, Michigan.

66.     The last payment on the claim used as the basis for Proof of claim # 2-1, was March 19th, 2008.  Furthermore, proof of claim # 2-1 states on page 3 that the underlying debt was "charged off" on March 12th, 2008.

67.     The last payment received on these alleged debts were over 4 years prior to the filing of Araceli Gonzalez's bankruptcy case.

68.     Defendant, Asset Acceptance is not the valid owner and/or assignee of the underlying claim used as the basis for filing Proof of Claim # 2-1.

69.     Attached to Proof of Claim # 2-1 is a bill of sale purporting to grant Plaintiff, Asset Acceptance ownership of the underlying debt.  However, the Bill of Sale attached to proof of claim # 2-1 purports to sell an excel spreadsheet listing numerous debts for a mere "$1.00" and makes the alleged assignment without warranty with regard to ownership of the Accounts and other rights, privileges and documentation referred to in the assignment.

70.     On February 12, 2015, the Chapter 13 Trustee, Thomas H. Billingslea took the Debtor's funds on hand with the Chapter 13 Trustee and distributed $92.92 to Plaintiff, Asset Acceptance to pay Proof of Claim # 2-1 filed in Araceli Gonzalez's Bankruptcy case (Case No. 13-09685-MM13).

71.     On April 23, 2015, the Chapter 13 Trustee, Thomas H. Billingslea again took the Debtor's funds on hand with the Chapter 13 Trustee and distributed another $227.55 to Asset Acceptance to pay Proof of Claim # 2-1 filed in Araceli Gonzalez's Bankruptcy case (Case No. 13-09685-MM13).

72.     On May 21, 2015, the Chapter 13 Trustee, Thomas H. Billingslea again took the Debtor's funds on hand with the Chapter 13 Trustee and distributed another $253.80 to Asset to pay Proof of Claim # 2-1 filed in Araceli Gonzalez's Bankruptcy case (Case No. 13-09685-MM13).

73.     On June 11, 2015, the Chapter 13 Trustee, Thomas H. Billingslea again took the Debtor's funds on hand with the Chapter 13 Trustee and distributed another $105.00 to Asset Acceptance to pay Proof of Claim # 2-1 filed in Araceli Gonzalez's Bankruptcy case (Case No. 13-09685-MM13).

74.     On July 16, 2015, the Chapter 13 Trustee, Thomas H. Billingslea again took the Debtor's funds on hand with the Chapter 13 Trustee and distributed

1    another $131.25 to Asset Acceptance to pay Proof of Claim # 2-1 filed in

2    Plaintiff Araceli Gonzalez's Bankruptcy case (Case No. 13-09685-MM13).

3    75.    On August 13, 2015, the Chapter 13 Trustee, Thomas H. Billingslea

4    took the Debtor's funds on hand with the Chapter 13 Trustee and distributed

5    another $78.75 to Asset Acceptance to pay Proof of Claim # 2-1 filed in

6    Plaintiff Araceli Gonzalez's Bankruptcy case (Case No. 13-09685-MM13).

7    76.    To date, the Defendants have unjustly received $889.27 in payments

8    on Proof of Claim # 2-1 filed in Araceli Gonzalez's Bankruptcy case (Case

9    No. 13-09685-MM13) (See ¶ 67-78).

10   77.    The underlying debt supporting proof of claim # 2-1 was never

11   reduced to judgment prior to Araceli Gonzalez filing her bankruptcy case,

12   and Plaintiff never made another payment on this alleged debt after 2008.

13   78.    The Defendants knew they were not valid owners of the underlying

14   debts, therefore Defendants knowingly and intentionally presented a false

15   claim for proof (Proofs of Claim # 2-1) against the estate of Plaintiff, Araceli

16   Gonzalez in her Chapter 13 Bankruptcy case.

17   79.    Furthermore, Defendants knew they were not entitled to payment on

18   these time-barred debts, therefore Defendants knowingly and intentionally

19   received material amounts of property from Plaintiff, Araceli Gonzalez after

20   the filing of her bankruptcy case, with the intent to defeat the provisions of

21   the bankruptcy code by filing and receiving payments on proof of claim # 2-

22   1.

### *Predicate Acts Involving Plaintiff Giana Matanane*

Violations of 18 U.S.C. §152(4)&(5)
[Fraud Connected to Bankruptcy - 18 U.S.C. 1961(1)(D)]

80.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 79, inclusive, as though fully set forth.

81.     On January 31, 2013, Plaintiff, Giana Matanane filed a joint Chapter 13 bankruptcy case with her husband in the United States Bankruptcy Court for the Southern District of California with case number 13-00986-MM13.

82.     On February 27, 2013, Defendant, Asset Acceptance filed a proof of claim, marked as Proof of Claim # 5-1 in Plaintiff, Giana Matanane's Chapter 13 bankruptcy case (Case No. 13-00986-MM13).

83.     Proof of claim # 5-1 provided for a claim in the amount of $3,573.30, and listed the current owner and creditor as Asset Acceptance, the original creditor as CITI Associate, and provided that Defendant, Asset Acceptance was the agent where notices and payments should be sent, providing Asset Acceptance's address in Warren, Michigan.

84.     The last payment made on the account used as the basis for Proof of claim # 5-1, was May 4th, 2000.

85.     The last payment received on these alleged debts were over 4 years prior to the filing of Giana Matanane's bankruptcy case.  The debt used as the basis for proof of claim # 5-1 had been time barred by California's statute of limitations (CCP § 337) for over 8 years prior to the Defendants filing proof of claim # 5-1.

86.     Defendant, Asset Acceptance is not the valid owner and/or assignee of the underlying claim used as the basis for filing Proof of Claim # 5-1.

87.     On May 7, 2013, Defendant, Asset Acceptance filed another proof of claim, marked as Proof of Claim # 8-1 in Plaintiff, Giana Matanane's Chapter 13 bankruptcy case (Case No. 13-00986-MM13).

88.     Proof of claim # 8-1 provided for a claim in the amount of $891.11, and listed the current owner and creditor as Asset Acceptance, the original creditor as Target National Bank, provided that Defendant, Asset Acceptance was the agent where notices and payments should be sent, and provided Asset Acceptance's address in Warren, Michigan.

89.     The last payment made on the account used as the basis for Proof of claim # 8-1, was November 7th, 2007.

90.     The last payment received on these alleged debts were over 4 years prior to the filing of Giana Matanane's bankruptcy case.  The debt used as the basis for proof of claim # 8-1 was time barred by California's statute of limitations (CCP § 337) prior to the Plaintiff filing her bankruptcy case and Defendants filing proof of claim # 8-1.

91.     Furthermore, Defendant, Asset Acceptance is not the valid owner and/or assignee of the underlying claim used as the basis for filing Proof of Claim # 8-1.

92.     On May 7, 2013, Defendant, Asset Acceptance filed another proof of claim, marked as Proof of Claim # 9-1 in Plaintiff, Giana Matanane's Chapter 13 bankruptcy case (Case No. 13-00986-MM13).

93.     Proof of claim # 9-1 provided for a claim in the amount of $875.77, and listed the current owner and creditor as Asset, the original creditor as Target National Bank, provided that Defendant, Asset was the agent where notices and payments should be sent, and provided Asset Acceptance's address in Warren, Michigan.

94.     The last payment made on the account used as the basis for Proof of claim # 9-1, was November 7th, 2007.

95.     The last payment received on these alleged debts were over 4 years prior to the filing of Giana Matanane's bankruptcy case.  The debt used as the basis for proof of claim # 9-1 was time barred by California's statute of limitations (CCP § 337) prior to the Plaintiff filing her bankruptcy case and Defendants filing proof of claim # 9-1.

96.     Furthermore, Defendant, Asset Acceptance is not the valid owner and/or assignee of the underlying claim used as the basis for filing Proof of Claim # 9-1.

97.     On March 29, 2013, Plaintiff, Giana Matanane's Chapter 13 plan was confirmed.  The confirmed Chapter 13 plan provided for payment of 100% of all allowed general unsecured claims.

98.     From February 11, 2014, through August 11, 2015, the Chapter 13 Trustee, David L. Skelton took the Debtor's funds on hand with the Chapter 13 Trustee and distributed nineteen (19) monthly installment payments to Asset to pay Proof of Claim # 5-1 filed in Giana Matanane's Bankruptcy case (Case No. 13-00986-MM13).  The total payments made to Defendants over that 19 month period from February 2014 to August 2015 was $1,235.23.   The payments are still ongoing, and without court intervention Defendants will continue to receive monthly payments until the entire claim #5-1 is paid in full.

99.     From March 11, 2014, through August 11, 2015, the Chapter 13 Trustee, David L. Skelton took the Debtor's funds on hand with the Chapter 13 Trustee and distributed fifteen (15) installment payments to Asset to pay Proof of Claim # 8-1 filed in Giana Matanane's Bankruptcy case (Case No. 13-00986-MM13).  The total payments made to Defendants over the period from March 2014 to August 2015 was $308.05.   The payments are still ongoing, and without court intervention Defendants will continue to receive future installment payments until the entire claim # 8-1 is paid in full.

100.     From March 11, 2014, through August 11, 2015, the Chapter 13 Trustee, David L. Skelton took the Debtor's funds on hand with the Chapter 13 Trustee and also distributed fifteen (15) installment payments to Asset Acceptance to pay Proof of Claim # 9-1 filed in Giana Matanane's Bankruptcy case (Case No. 13-00986-MM13).  The total payments made to Defendants over that period from March 2014 to August 2015 for Proof of Claim # 9-1 was $302.75.   The payments are still ongoing, and without court intervention Defendants will continue to receive future installment payments until the entire claim # 9-1 is paid in full.

101.     To date, the Defendants have unjustly received $1,223.25 in payments on Proof of Claim # 5-1; $308.05 in payments on Proof of Claim # 8-1; and $302.75 in payments on Proof of Claim # 9-1 filed in Plaintiff, Giana Matanane's Bankruptcy case (Case No. 13-00986-MM13) (See ¶¶ 101-103).

102.     The underlying debt supporting proof of claims # 5-1, # 8-1, and # 9-1 were never reduced to judgment prior to Giana Matanane filing her bankruptcy case, and Plaintiff never made a subsequent payments on these alleged debts.

103.     The Defendants knew they were not the valid owners of the underlying debts, therefore Defendants knowingly and intentionally presented a false claim for proof (Proofs of Claim # 5-1, # 8-1 and # 9-1) against the estate of Plaintiff, Giana Matanane in her Chapter 13 Bankruptcy case.

104.     Furthermore, Defendants knew they were not entitled to payment on these time-barred debts, therefore Defendants knowingly and intentionally received material amounts of property from Plaintiff, Giana Matanane after the filing of her bankruptcy case, with the intent to defeat the provisions of the bankruptcy code by filing and receiving payments on proof of claim # 5-1, # 8-1 and # 9-1.

### *General Facts Relating to Plaintiffs' Claims*

105.   Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 104, inclusive, as though fully set forth.

106.   In the bankruptcy context, applicable state law controls whether a particular underlying claim is enforceable and eligible for payment through the Chapter 13 plan.

107.   Pursuant to California's Statute of Limitations, Cal. Code Civ. Proc. §337, the debt underlying the proofs of claim of Samuel Rivera, Laureano Avalos, Araceli Gonzalez, and Giana Matanane were time-barred and not valid claims pursuant to California's applicable statute of limitations at the time of the bankruptcy filing and at the time the proofs of claim were filed.

108.   The bankruptcy code provides for the debtors to be able to object to a proof of claim, although the costs of preparing and filing the objection are born by the debtors.

109.   The Plaintiffs and other similarly situated bankruptcy debtors must pay an attorney to object to these time-barred claims, otherwise they are allowed.  Therefore, the amount of these time barred claims provides a strong disincentive to other similar situated bankruptcy debtors (including the Plaintiffs) to object to claims where the amount to be paid to the creditor is less than what an attorney would charge to file an objection.

110.   Furthermore, since the Plaintiffs and other similarly situated bankruptcy debtors must take the initial action to object to the time-barred and/or false proofs of claim, and the Defendants file massive amounts of these proofs of claim en masse, the Defendants are fully aware that Bankruptcy Debtors and their attorneys will fail to object to a large percentage of these proofs of claim. This allows Defendants to be unjustly

1   enriched by receiving payments on a large number of these invalid proofs of

2   claim.

3   111.     Midland Funding and Asset Acceptance are not the valid owners of

4   the debts used as the basis for the proofs of claim filed in the Plaintiffs' and

5   other similarly situated individuals' bankruptcy cases.  Defendants have no

6   right to be paid for Proofs of claim # 2-1, # 3-1 and # 4-1 filed in Samuel

7   Rivera's bankruptcy case, Proof of Claim # 8-1 filed in Laureno Avalos'

8   bankruptcy case, Proof of Claim # 2-1 filed in Araceli Gonzalez's

9   bankruptcy case, and Proofs of Claim # 5-1, # 8-1 and # 9-1 filed in Giana

10  Matanane's bankruptcy case.   The basis of these eight proofs of claim filed

11  in Plaintiffs' bankruptcy cases were debts allegedly owed to Bank of Marin,

12  Bank of America, Verizon Wireless, Sherman Financial, CITI Associate,

13  and Target National Bank respectively.  These eight (8) proofs of claim were

14  fraudulent as neither Asset nor Midland Funding are the valid owners or

15  assignees of the underlying debts.

16  112.     Furthermore, Defendants knew they filed the aforementioned proofs

17  of claim based on time-barred debts.  Defendants are some of the largest and

18  most sophisticated debt collectors in the nation, and hold some of the largest

19  portfolios of claims in bankruptcy.  Therefore, the Defendants knew of the

20  applicable statute of limitations.

21  113.     Defendants knowingly sought out and accepted payment on fraudulent

22  and time-barred claims through the Plaintiffs' and other similarly situated

23  individuals' Chapter 13 bankruptcy cases.

24  114.     During the "Class Period," as defined below, Defendants continuously

25  over a consistent period of time filed hundreds of thousands of time-barred

26  proofs of claim and received payment on said time-barred claims in violation

27  of the applicable law in many other similarly situated consumer debtors'

28  Chapter 13 bankruptcy cases throughout California and the entire United

States.

115.     Defendants are aware that it is usually not economically feasible for most consumer Chapter 13 bankruptcy debtors to prepare and file such objections to these fraudulent proofs of claim, especially where the amount to be paid to the Creditor is less than the attorney's fees required to object to the claim.

116.     Defendants knew the Plaintiffs and hundreds of thousands of other similarly situated bankruptcy debtors would not object to these fraudulent and time-barred claims, thus Encore Capital has worked with its subsidiaries to form a criminal Enterprise consisting of the named Defendants to intentionally file these invalid proofs of claims en masse to unjustly receive material amounts of payments from the property of thousands of bankruptcy debtors throughout the United States, with the intent to defeat the provisions of the bankruptcy code.

117.     Defendants are aware that time-barred proofs of claim are unlikely to be objected to as it is often not economically feasible.  Upon information and belief, Encore and the other named Defendants have analyzed statistics regarding the rate of payment on time-barred claims and have concluded that although the claims are not lawfully entitled to payment, they often will still receive payment as a result of the economically unfeasible procedures in the bankruptcy proof of claim system.   Acting with this knowledge, Encore and the other named Defendants have created an Enterprise and a system by which to work together to file hundreds of thousands of small time-barred proofs of claim in bankruptcy cases, and in doing so accept multi-million dollars in payments in aggregate on these fraudulent and/or invalid time-barred claims.

118.     Defendants have conspired together to file in concert time-barred proofs of claim with the intent to knowingly and intentionally misrepresent

the validity of said claims and receive material amounts of property from a
debtor after the filing of a bankruptcy case, with intent to defeat the
provisions of title 11 of the U.S. Code.

119.     Defendants are relying on unlawful and fraudulent business practices
to accept relatively small payments on a large scale in order to reap a
significant financial windfall on claims that Defendants would not have been
able to collect upon, but for the Enterprise's deceptive fraudulent business
practices.

120.     Plaintiffs suffered injuries in fact and lost money as a result of
Defendants' unlawful and fraudulent business practices alleged herein.

## CLASS ACTION ALLEGATIONS

121.     Plaintiffs reallege and incorporate by reference each and every
allegation contained in Paragraphs 1 through 120, inclusive, as though fully
set forth.

122.     Plaintiffs and the members of the Class have all suffered injury in fact
as a result of the Defendants' unlawful conduct.

123.     The "Class Period" means 48 months prior to the filing of the
Complaint in this action.

124.     Plaintiffs bring this lawsuit on behalf of themselves and other Chapter
13 Debtors similarly situated under Rule 23(b)(2) and (b)(3) of the Federal
Rules of Civil Procedures.  Subject to additional information obtained
through further investigation and/or discovery, the proposed nationwide class
("Class") seeking certification of claims for declaratory and injunctive relief,
and for damages pursuant to 18 U.S.C. § 1962(d) for conspiracy to violate 18
U.S.C. § 1962(c), and for violating 18 U.S.C. § 1962(c), consists of:

> All persons who filed a Chapter 13 bankruptcy case in the United States, where one or more of the named defendants filed a proof of claim for a claim that Defendants were not the valid owners of and/or the proof of claim was time-barred at the time the case was filed, and Defendants received payment from the Chapter 13 Trustee on that proof of claim within 48 months prior to the filing of the Complaint in this action.

125.     Excluded from the Class are the named Defendants, and any of their respective officers, directors, employees, or agents.  Plaintiffs reserve the right to modify or amend the Class definition before the Court determines whether certification is appropriate.

126.     *Ascertainability*.  The members of the Class are readily ascertainable from Defendants' records and/or Defendants' agents' records regarding bankruptcy cases within the Class Period where Defendants have filed a proof of claim and received payment on a fraudulent and/or time-barred claim.  Alternatively, the members of the Class are readily ascertainable by searching and reviewing PACER for publicly-available proofs of claim filed by Defendants during the Class Period, and payment histories readily ascertainable from the Chapter 13 Trustee's publicly-available websites.

127.     *Numerosity*.  The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that the proposed class consists of hundreds of thousands of members.

128.     *Existence and Predominance of Common Questions of Law and Fact*.  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  All members of the Class have been subject to the same conduct and their claims are based on the widespread filing of fraudulent, time-

barred and unlawful proofs of claim in Chapter 13 bankruptcy cases.  The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendants routinely file proofs of claim in Chapter 13 bankruptcy cases on statutorily time-barred debts;

b. Whether Defendants routinely file proofs of claim in Chapter 13 bankruptcy cases on debts that they have no legal right to collect upon;

c. Whether Defendants knowingly and intentionally filed proofs of claim in Chapter 13 bankruptcy cases, because it is economically infeasible for most Debtors to object to relatively small claims on an individual basis, and by filing such claims en masse, Defendants have enriched themselves through willful violations of the law;

d. Whether Defendants acted intentionally to enrich themselves by filing time-barred proofs of claim in Chapter 13 bankruptcy cases;

e. Whether Defendants, through their conduct, received money that, in equity and good conscience, belongs to Plaintiffs and other members of the Class;

f. Whether the Defendants are an "enterprise" as defined under 18 U.S.C. § 1961(4);

g. Whether the Defendants' filing of time-barred and fraudulent proofs of claim in bankruptcy cases are an activity which affects interstate or foreign commerce;

h. Whether the Defendants are engaged in a "pattern of racketeering activity" as defined under 18 U.S.C. § 1961(5);

i. Whether the Defendants filing of time-barred and invalid proofs of claim and receiving payment from the bankruptcy trustee upon said time barred claims in bankruptcy cases is a "racketeering activity," as defined under 18 U.S.C. § 1961(1)(D) and 18 U.S.C. § 152(5);

j.  Whether the filings of Proofs of Claims by Defendants where they misrepresented their ownership of the subject claim in bankruptcy cases is a "racketeering activity," as defined under 18 U.S.C. § 1961(1)(D) and 18 U.S.C. § 152(4);

k.  Whether the Defendants' racketeering activities were a proximate cause of the injuries to the Plaintiffs and the proposed members of the Class;

l.  Whether Plaintiffs and proposed members of the Class are entitled to equitable relief, including but not limited to restitution and/or disgorgement; and

m. Whether Plaintiffs and proposed members of the Class are entitled to injunctive relief sought herein.

129.   ***Typicality***.  Plaintiffs' claims are typical of the claims of the members of the Class in that Plaintiffs are members of the Class that Plaintiffs seek to represent.  Plaintiffs, like members of the proposed Class, had monies paid into their Chapter 13 bankruptcy plans paid out to Defendants for proofs of claim predicated on debts not owed to the Defendants and/or based on uncollectable time-barred debts.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent members of the Class.  Defendants have no defenses unique to the named Plaintiffs.

130.   ***Adequacy of Representation***.  Plaintiffs will fairly and adequately protect the interests of the members of the Class.  Plaintiffs have retained counsel experienced in bankruptcy law and consumer protection law, including class actions.  Plaintiffs have no adverse or antagonistic interests to those of the Class, and will fairly and adequately protect the interests of the Class.  Plaintiffs' attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and proposed Class.

131.    *Superiority*.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  Individualized litigation would create the danger of inconsistent and/or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the courts and the issues raised by this action.  The damages or other financial detriment suffered by individual Class members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the claims against the Defendants.  The injury suffered by each individual member of the proposed class is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for members of the proposed Class to individually redress effectively the wrongs to them.  Even if the members of the proposed Class could afford such litigation, the Court system could not.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.  Therefore, a class action is maintainable pursuant to Fed. R. Civ. P. 23(b)(3).

132.    Unless the Class is certified, Defendants will retain monies received as a result of Defendants' unlawful and fraudulent conduct alleged herein. Unless a class wide injunction is issued, Defendants will also likely continue to file proofs of claim on time-barred debts and debts they do not in fact own the rights to and thus continue to unjustly collect payments on those invalid claims in violation of the law.

133.    Furthermore, Defendants have acted or refused to act on grounds that

1   are generally applicable to the Class so that declaratory and injunctive relief

2   is appropriate to the Class as a whole, making class certification appropriate

3   pursuant to Fed R. Civ. P. 23(b)(2).

4

5

6   **<u>FIRST CAUSE OF ACTION</u>**

7

8   **VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT**
    **[18 U.S.C. § 1962(c)]**

9
10   [AS T0 MIDLAND FUNDING, MIDLAND CREDIT, AND ASSET ACCEPTANCE ONLY]

11

12   134.     Plaintiffs reallege and incorporate by reference each and every

13   allegation contained in Paragraphs 1 through 133, inclusive, as though fully

14   set forth.

15   135.     Midland Funding, Midland Credit, and Asset Acceptance violated the

16   Federal RICO statute and Plaintiffs were injured as a result.

17

18   *Persons*

19   136.     Each Defendant is an entity capable of holding legal or beneficial

20   interest in property and therefore a "person" within the meaning of 18 U.S.C.

21   § 1961(3).

22

23   *Enterprise*

24   137.     Defendants together form an association-in-fact for the common and

25   continuing purpose described herein and constitute an enterprise within the

26   meaning of 18 U.S.C. § 1961(4) engaged in the conduct of their affairs

27   through a continuing pattern of racketeering activity.  The members of the

28   enterprise function as a continuing unit with an ascertainable structure

separate and distinct from that of the conduct of the pattern of racketeering activity.   There may also be other members of the enterprise who are unknown at this time.

138.      Defendants are all part of an association-in-fact that jointly works to achieve their common purpose of filing time-barred proofs of claim and/or fraudulent proofs of claim in bankruptcy cases and obtaining payments on those claims.  Encore has organized together different subsidiaries to perform different functions of the racketeering activity.  Defendant, Midland Credit operates out of the same San Diego, CA office location as Defendant, Encore.  Defendant, Midland Credit collects on behalf of Defendants, Midland Funding and Asset, and all the monies received from the Chapter 13 Trustees as result of the racketeering activities are sent to Defendant, Asset's office in Warren, Michigan for payment processing.   Therefore, the Defendants' association constitutes an enterprise as that term is defined under 18 U.S.C. § 1961(4).

### *Defendants Engaged in and Affected Interstate Commerce*

139.      Defendants engaged in and affected interstate commerce by electronically filing proofs of claim in bankruptcy courts throughout the United States.

140.      Defendants engaged in and affected interstate commerce by filing proofs of claim also by U.S. Mail in bankruptcy courts throughout the United States.

141.      Defendants engaged in and affected interstate commerce by accepting payments through the mail from bankruptcy Trustees throughout the United States.

142.      Defendants engaged in and affected interstate commerce by operation portions of their enterprise in different states.

1

2                    *Pattern of Conduct or Participation*

3      143.     Defendants have continuously filed hundreds of thousands of time-

4           barred proofs of claim in bankruptcy cases throughout the country (including

5           the State of California), and received payments for said Proofs of Claim

6           continuously over the last four years.

7      144.     On February 27, 2013, Defendant, Asset Acceptance filed a proof of

8           claim, marked as Proof of Claim # 5-1 in Plaintiff, Giana Matanane's

9           Chapter 13 bankruptcy case and as a result unjustly received $1,235.23 in

10          payment on said fraudulent and time-barred claim (Case No. 13-00986-

11          MM13).

12     145.     On May 7, 2013, Defendant, Asset Acceptance filed two more proofs

13          of claim, marked as Proof of Claim # 8-1 and # 9-1 in Plaintiff, Giana

14          Matanane's Chapter 13 bankruptcy case and as a result unjustly received

15          $308.05 in payments on #  8-1's fraudulent and time-barred claim, and

16          $302.75 on # 9-1's fraudulent and time barred claim  (Case No. 13-00986-

17          MM13).

18     146.     On October 4, 2013, Defendant, Asset Acceptance filed Proof of

19          Claim # 2-1 on behalf of the enterprise in Plaintiff, Araceli Gonzalez's

20          bankruptcy case and as a result Defendants unjustly received $889.27 on said

21          fraudulent and time-barred claim (Case No. 13-09685-MM13).

22     147.     On May 27, 2014, Defendant, Midland Credit filed Proof of Claim # 2-

23          1, and Proof of Claim # 3-1 on behalf of the enterprise in Plaintiff, Samuel

24          Rivera's bankruptcy case and as a result Defendants unjustly received

25          $483.84 in payments on Proof of Claim # 2-1, and $148.83 in payments on

26          Proof of Claim # 3-1 (Case No. 14-04386-LA13) .

27     148.     On May 27, 2014, Defendant, Midland Credit filed Proof of Claim # 8-

28          1 on behalf of the enterprise in Plaintiff, Laureano Avalos' Bankruptcy case

1     and as a result Defendants unjustly received $18.76 in payments on Proof of

2     Claim # 8-1 (Case No. 14-01580-MM13).

3   149.     On  June 16, 2014, Defendant, Midland Credit filed Proof of Claim #

4     4-1 in Plaintiff, Samuel Rivera's bankruptcy case on behalf of the enterprise

5     and as a result Defendants unjustly received $1,150.15 in payments on Proof

6     of Claim # 4-1 (Case No. 14-04386-LA13) .

7   150.     Defendants have repeatedly over a course of extended period of time

8     filed thousands of fraudulent and time-barred proofs of claim and received

9     payments as a result from the Plaintiffs and others similarly situated, after the

10     filing of a case under Title 11.

11   151.     As laid out above, all proofs of claim were filed after October 15,

12     1970, and the last proof of claim was filed within two years of the previous

13     proof of claim.

14   152.     In fact, each of Defendants has committed or aided and abetted in the

15     commission of thousands of acts of racketeering activity over the last four

16     years.  Each act of racketeering activity was related, had a similar purpose,

17     involved the same or similar participants and method of commission, had

18     similar results and impacted similar victims, including Plaintiffs and the

19     similarly situated class members.

20   153.     Over half of all proofs of claim filed by Defendants are based upon

21     time-barred debts and/or claims they have no right to payment upon.  They

22     have demonstrated a pattern of filing proofs of claims in hundreds of

23     thousands of chapter 13 cases throughout the United States, wherein a

24     majority of said claims are invalid and they had no right to collect upon them.

25   154.     The multiple acts of racketeering activity which Defendants committed

26     or aided and abetted in the commission of, were related to each other and

27     amount to and pose a threat of continued racketeering activity, and therefore

28

1    constitute a "pattern of "racketeering activity" as defined in 18 U.S.C. §

2    1961(5).

3

4    *Racketeering Activities*

5    [18 U.S.C. § 1961(1)(D)]

6    Violations of 18 U.S.C. § 152(4)

7

8    155.    The Plaintiffs' bankruptcy proceedings had been commenced prior to

9    Defendants' filing a proof of claim.

10   156.    The Defendants presented or caused to be presented a proof of claim in

11   the bankruptcy cases of Plaintiffs.

12   157.    The proofs of claim filed by Defendants in Plaintiffs' bankruptcy cases

13   were false as to a material matter; and the Defendants knew the proofs of

14   claim were false and acted knowingly and fraudulently when they filed said

15   proofs of the claim.

16   158.    The Defendants were not the valid owners of the alleged debts used to

17   form the basis of Proofs of Claim filed in Plaintiffs' cases, therefore

18   Defendants knowingly and fraudulently presented a false claim for proof

19   against the estate of the Plaintiffs in violation of 18 U.S.C. § 152(4).

20   159.    But for Defendants' violations of 18 U.S.C. §152(4) Plaintiffs and

21   others similarly situated would not have been deprived of the funds paid to

22   Defendants.

23   160.    Therefore, Plaintiffs and the Class members have suffered

24   compensable injury proximately caused by the Defendants' violations of 18

25   U.S.C. §152(4).

26

27

28

*Racketeering Activities*

[18 U.S.C. § 1961(1)(D)]

Violations of 18 U.S.C. § 152(5)

161.    The amount of funds paid to Defendants by the Bankruptcy Trustee on behalf of the Plaintiffs were material amounts as that term is defined in 18 U.S.C. §152(5).

162.    Defendants' practice of pursuing payments en masse on time-barred debts by filing proofs of claim in Chapter 13 bankruptcy cases where it is financially unfeasible for Debtors to incur attorney's fees to object to the claims despite the claims being invalid unjustly enriched Defendants.

163.    Defendants possessed the specific intent to defeat the provisions of title 11 (i.e. bankruptcy code), when they filed these proofs of claim causing the Plaintiffs to pay the Defendants material amounts of money.

164.    By knowingly filing claims on time-barred debts wherein they would receive payment on claims that Defendants had no basis for payment under the bankruptcy code, the Defendants intended to defeat the provisions of Title 11, therefore Defendants violated 18 U.S.C. §152(5).

165.    By knowingly operating a scheme to obtain payment on claims for which the Defendants were not the valid owners of the claim under Title 11, and then receiving payment on those claims, Defendants violated 18 U.S.C. §152(5).

166.    But for Defendants' violations of 18 U.S.C. §152(5), Plaintiffs and others similarly situated would not have been deprived of the funds paid to Defendants.

167.    Therefore, Plaintiffs and members of the Class have suffered compensable injury proximately caused by Defendants' violations of 18 U.S.C. §152(5).

*Racketeering Activities*

[18 U.S.C. 1961(1)(D)]

Fraud involving a Case under Title 11

168.    Defendants' violations of 18 U.S.C. § 152(4) and § 152(5) are offenses involving fraud connected with a case under title 11 and thus "Racketeering Activities" within the meaning of 18 U.S.C. § 1961(1)(D).

169.    Defendants, each of whom are persons associated with the enterprise, did knowingly, willfully and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(D), 1961(5), and 1962(c). The Racketeering Activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise.  Defendants had the specific intent to engage in the substantive RICO violation alleged herein.

170.    Defendants committed multiple false misrepresentations of material fact regarding the validity of the claims when they prepared and filed multiple proofs of claim in Plaintiffs' bankruptcy cases.

171.    The act of preparing and filing a proof of claim in Plaintiffs' bankruptcy cases were misrepresentations that the Defendants possessed valid claims that they had a right to collect upon.

172.    The proofs of claim filed by Defendants in Plaintiffs' bankruptcy cases were invalid as the Defendants were barred from collecting upon them under the applicable state law statute of limitations.

173.    Defendants were not the valid owners of the underlying debts that were represented as the basis for the Proofs of Claim filed in the Plaintiffs' bankruptcy cases.  By placing the Plaintiffs' names on the proof of claim as the "Creditor" or "Person whom Debtor owes money or property" this was a

material misrepresentation, as the Plaintiffs were not the valid assignee of the underlying claims.

174.    Defendants knew or reasonably should have known that there was no legal basis for payment on their unlawful time-barred claims.

175.    Defendants knew or reasonably should have known that they were not the valid owners or assignees of the debts underlying their fraudulent proofs of claim.

176.    Defendants possessed the intent to deceive the bankruptcy court, the Plaintiffs, and the Chapter 13 Bankruptcy Trustees by filing these small proofs of claim en masse as they knew at the time of filing that the Defendants were not lawfully entitled to payment on said proofs of claim, but would likely not be objected to, and therefore filed the proofs of claim with the specific intent to deceive the Plaintiffs in order to receive payment by defeating the provisions of the bankruptcy code.

177.    The Plaintiffs and thousands of other similarly situated individuals have justifiably relied upon the fraudulent misrepresentations made by the Defendants regarding the validity of the Defendants' proofs of claim.

178.    Plaintiffs were justified in relying on the proofs of claim, because Defendants filed the claims and represented themselves as the valid owners with a legal right to collect upon these debts.

179.    But for the Defendants misrepresentations regarding the validity and legal status of the proofs of claim, the Plaintiffs and others similarly situated would not have been deprived of the funds paid to Defendants.

180.    Therefore, Plaintiffs and the other members of the Class have suffered compensable injury proximately caused by the commission of the Defendants' misrepresentations.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Injury to Plaintiffs in their Business or Property*

181.     Plaintiffs and others similarly situated have been injured and continue to be injured in their business and property as a direct result of Defendants' violations of 18 U.S.C. § 1962(c).   The unlawful action of Defendants have directly and proximately caused and continues to cause injuries to Plaintiffs and other similarly situated individuals in their business and/or property.

## SECOND CAUSE OF ACTION

### CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT
**[CONSPIRACY - 18 U.S.C. § 1962(d)]**
[AS TO ALL DEFENDANTS]

182.      Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 181, inclusive, as though fully set forth.

183.     In violation of 18 U.S.C. 1962(d), the Defendants Encore, Midland Funding, Midland Credit, and Asset Acceptance knowingly, willfully, and unlawfully conspired to facilitate a scheme which included the operation and management of  a RICO enterprise through a pattern of racketeering activity as alleged in paragraphs 1-183 above.

184.     The conspiracy commenced as early as 2011 and is ongoing.

185.     The conspiracy's purpose was to divert money from the Plaintiffs' Chapter 13 bankruptcy estate for their own benefit and to facilitate the filing of time-barred and invalid claims en masse to defraud Bankruptcy Debtors, the Chapter 13 Trustees, and the Bankruptcy courts into paying the

Defendants on fraudulent and/or time-barred proofs of claim.

186.     Each Defendant committed at least one overt act in furtherance of such conspiracy.  These acts in furtherance of the conspiracy included, misleading Plaintiffs as to the true validity of the proofs of claim filed in the aforementioned bankruptcy cases, preparing the invalid proofs of claim, filing the invalid proofs of claim in the Plaintiffs' bankruptcy cases, analyzing statistics regarding the rate of objections, meeting with the other Defendants to plan out the organizational structure of the enterprise, structure the different subsidiary entities of Encore together to most efficiently mislead the Plaintiffs and other similarly situated bankruptcy debtors, and  accepting payments upon said invalid proofs of claim on behalf of the enterprise.

187.     Defendants have colluded together to file claims en masse in the Plaintiffs' Bankruptcy cases and other bankruptcy courts throughout the United States, for claims that they would not be entitled to collect upon under applicable law.

188.      Defendants have colluded together to create and implement a nationwide system to use the proof of claim system in Chapter 13 cases to fraudulently enrich themselves by seeking out payment on claims they know they are not lawfully entitled to payment upon.  Encore executives have met with officers of Midland Credit, Midland Funding, and Asset Acceptance and reviewed statistics and rates of objections by bankruptcy debtors to Defendants' proofs of claim.  Encore executives through multiple communications and meetings with all of the other Defendants have conspired to knowingly file proofs of claim that they do not have a valid claim to payment upon and/or know are time barred by the non-bankruptcy law applicable statute of limitations.

189.     Upon information and belief, Defendants have prepared and analyzed

statistics regarding the rate of objection to these time barred proofs of claim, and through said analysis Defendants know that Debtors and Chapter 13 Trustees rarely object to such claims as it is often not economically feasible given the costs of paying a lawyer to file objections to these proofs of claim. Therefore, based upon the low rate of objections by bankruptcy debtors, Defendants have knowingly colluded together to file time barred a proofs of claim, in order to unjustly receive payment on said claims regardless of the claims' actual validity.

190.     Defendants have no lawful, good faith reason to file claims en masse other than to unjustly enrich themselves via this fraudulent conduct, thus they possess the specific intent to file these invalid proofs of claims in order to acquire multi-million dollars in payments from Chapter 13 bankruptcy debtors throughout the United States.

191.     Defendants have colluded together as part of an enterprise whose purpose is to perpetuate a massive fraud upon thousands of similarly situated bankruptcy debtors throughout the United States, in order to unjustly enrich the Defendants with hundreds of millions of dollars in unlawful claims that Defendants would not have received payment upon but for said conspiracy to knowingly and fraudulently receive material amounts of property from Debtors after the filing of a bankruptcy case, with intent to defeat the provisions of the bankruptcy code.

192.     Even if one of the Defendants did not agree to harm the Plaintiffs specifically, the purpose of the acts they engaged in was to advance the overall object of the conspiracy, and the harm to Plaintiffs was a reasonably foreseeable consequence of Defendants' actions.

193.     Plaintiffs and others similarly situated have been injured and continue to be injured in their business and property by Defendants' conspiracy in violation of 18 U.S.C. § 1962(d).   The unlawful action of Defendants have

directly, illegally, and proximately caused and continues to cause injuries to Plaintiffs and others similarly situated in their business or property.


## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray that judgment be entered against Defendants, and each of them, and that Plaintiffs and the Class members be awarded as follows:

- The action be certified as a Class Action, Plaintiffs be appointed as the representatives of the Class, and Plaintiffs' attorneys be appointed Class counsel;
- Compensatory damages, for a sum duly trebled, plus interest to the Class pursuant to 18 U.S.C. § 1964(c);
- Attorney's fees, together with all costs and expenses pursuant to 18 U.S.C. § 1964(c);
- A temporary, preliminary and/or permanent order for injunctive relief requiring Defendants to: (i) discontinue filing proofs of claim in Chapter 13 bankruptcy cases on time-barred debts or debts they have no interest in; (ii) withdraw all proofs of claim already filed in Chapter 13 bankruptcy cases on time-barred debts or debts they have no interest in; (iii) refuse any payments already processed by Chapter 13 trustees but not yet deposited by Defendants on proofs of claim for time-barred debts or debts they have no interest in;
- Distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery where necessary and as applicable to prevent Defendants from retaining the benefits of their wrongful conduct;

1   • Prejudgment and post-judgment interest; and,

2   • Any and all other relief that this Court deems necessary or appropriate.

3

4   Dated: October 16, 2015                    Respectfully submitted,

5

6                                              **KAZEROUNI LAW GROUP, APC**

7

8                                              By:   /s/ Abbas Kazerounian
                                                     Abbas Kazerounian, Esq.
9                                                    Attorneys for Plaintiffs

10

11

12

13                      **TRIAL BY JURY**

14   194.    Pursuant to the Seventh Amendment to the Constitution of the United

15   States of America, Plaintiffs are entitled to, and demand, a trial by jury.

16

17   Dated: October 16, 2015                    Respectfully submitted,

18

19                                              **KAZEROUNI LAW GROUP, APC**

20

21                                              By:   /s/ Abbas Kazerounian
                                                     Abbas Kazerounian, Esq.
22                                                   Attorneys for Plaintiffs

23

24   **HYDE & SWIGART**
     Joshua B. Swigart, Esq. [SBN: 225557]
25   2221 Camino Del Rio South, Suite 101
     San Diego, CA 92108
26   Telephone: (619) 233-7770
     Facsimile: (619) 297-1022
27   *Attorneys for Plaintiffs*

28